Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | Anthony | Michael | Norris |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Western District of Washington

Case number: 19-41297-MJH
(if known)

## Official Form 427

*Personal*

## Cover Sheet for Reaffirmation Agreement                                    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
Fibre Federal Credit Union
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed    $ 2,836.09

To be paid under the reaffirmation agreement    $ 2,845.99

$ 114.00 per month for 29 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed    7.99 %

Under the reaffirmation agreement    7.99 %  ☑ Fixed rate
☐ Adjustable rate

**4. Does collateral secure the debt?**
☑ No
☐ Yes. Describe the collateral: _____
Current market value    $ _____

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J

6a. Combined monthly income from line 12 of Schedule I    $ 3,737.09

6b. Monthly expenses from line 22c of Schedule J    $ 3,642.00

6c. Monthly payments on all reaffirmed debts not listed on Schedule J    – $ _____

6d. Scheduled net monthly income    $ _____
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources after payroll deductions    $ _____

6f. Monthly expenses    – $ _____

6g. Monthly payments on all reaffirmed debts not included in monthly expenses    – $ _____

6h. Present net monthly income    $ _____
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☐ No<br>☐ Yes. Explain why they are different and complete line 10. _____ | |
| 8. Are the expense amounts on lines 6b and 6f different? | ☐ No<br>☐ Yes. Explain why they are different and complete line 10. _____ | |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No<br>☐ Yes. *A presumption of hardship arises (unless the creditor is a credit union).*<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. | |
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _____   ✗ _____<br>Signature of Debtor 1                       Signature of Debtor 2 (Spouse Only in a Joint Case) | |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☐ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☐ Yes | |

### Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

✗ _____  Date 06/14/2019
Signature                                             MM / DD / YYYY

Lisa Bates - Member Solutions Assoc.
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Check one.
☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Western District of Washington

In re Anthony Michael Norris,  
   *Debtor*

Case No. 19-41297-MJH

Chapter 7

## REAFFIRMATION DOCUMENTS

Name of Creditor: Fibre Federal Credit Union

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.

A. Brief description of the original agreement being reaffirmed: Personal Loan
                             *For example, auto loan*

B. *AMOUNT REAFFIRMED:* $ 2,845.99

 The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 05/09/2019, which is the date of the Disclosure Statement portion of this form (Part V).

 *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 7.9900 %.

 *See definition of "Annual Percentage Rate" in Part V, Section C below.*

 This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

[✓]  $ 114.00 per month for 29 months starting on 05/12/2019.

[ ]  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

    Description: _____
    Current Market Value  $ _____

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

[ ] Yes. What was the purchase price for the collateral?  $ _____

[X] No. What was the amount of the original loan?  $ 4,278.46

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 2,836.09 | $ 2,845.99 |
| Annual Percentage Rate | 7.9900 % | 7.9900 % |
| Monthly Payment | $ 114.00 | $ 114.00 |

H. [ ] Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.  DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

    Check one.  [ ] Yes  [ ] No

B. Is the creditor a credit union?

    Check one.  [✓] Yes  [ ] No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

　1. Your present monthly income and expenses are:

　　a. Monthly income from all sources after payroll deductions
　　(take-home pay plus any other income)　　　　　　　　　　　　　$_____

　　b. Monthly expenses (including all reaffirmed debts except
　　this one)　　　　　　　　　　　　　　　　　　　　　　　　　　　$_____

　　c. Amount available to pay this reaffirmed debt (subtract b. from a.)　$_____

　　d. Amount of monthly payment required for this reaffirmed debt　　$_____

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

　2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

　　Check one of the two statements below, if applicable:

　　☐　You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

　　☐　You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

　　Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

　　☐　You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                    Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  5-25-19      Signature _____
                                 *Debtor*

Date _____   Signature _____
                              *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Fibre Federal Credit Union        Po Box 1234 Longview, WA 98632
            *Print Name*                         *Address*

          Lisa Bates                    _____  06/14/19
       *Print Name of Representative*      *Signature*      *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date  6-17-19    Signature of Debtor's Attorney _____
                 Print Name of Debtor's Attorney  Susan H. Scelye

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.    DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

       i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

       ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

  

## Loan and Security Agreements and Disclosure Statement

| ☒ FIXED RATE<br>☐ VARIABLE RATE | LOAN DATE<br>04/29/2017 | LOAN NUMBER<br>0002 | ACCOUNT NUMBER | GROUP POLICY NUMBER<br>146-0526-8 | MATURITY DATE<br>05/12/2021 |
|---|---|---|---|---|---|
| | **BORROWER 1** | | | **BORROWER 2** | |
| NAME AND ADDRESS<br>ANTHONY M NORRIS<br>3362 OCEAN BEACH HWY<br>LONGVIEW, WA 98632 | | | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) | | |

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $<br>which includes your downpayment of $ 0.00 |
| 7.990 % | $ 770.36 | $ 4,278.46 | $ 5,460.01 e | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 47 | $114.00 | MONTHLY | STARTING 06/12/2017 |
| 1 | $102.01 | | 05/12/2021 |

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Demand:** ☐ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you get the insurance from us, you will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ | $ |

**Late Charge:**
**IF ANY PAYMENT IS PAST DUE 10 OR MORE DAYS YOU HAVE AGREED TO PAY $20.00
**MISC INFORMATION:**

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $           in Account No.           $           in Account No.

**Variable Rate:**

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign, or otherwise authenticate, as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| X /s/ Anthony Norris (SEAL) 04/29/2017 | X (SEAL) |
|---|---|
| BORROWER 1                        DATE | BORROWER 2                        DATE |
| X (SEAL) | X (SEAL) |
| ☐ OTHER BORROWER ☐ OWNER OF PROPERTY ☐ WITNESS     DATE | ☐ OTHER BORROWER ☐ OWNER OF PROPERTY ☐ WITNESS     DATE |

© CUNA Mutual Group 1999, 2000, 01, 02, 03, 04, 06, 08 All Rights Reserved

NXX01A-e

Credit Union: FIBRE FEDERAL CREDIT UNION    Loan No. 0002    Acct. No.
Borrower(s): ANTHONY M NORRIS

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of | Amount Given to You Directly | Amount Paid on Your Account | Prepaid Finance Charge |
|---|---|---|---|
| $ 4,278.46 | $ 3,000.00 | $ 0.00 | $ 0.00 |

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| $ 1,278.46 To CHASE | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you" or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $ 4,278.46 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 7.990 % per year.

For variable rate loans the initial interest rate is _____ % per year and will vary as follows:

**Collection Costs:**

Collection Costs and Attorney Fees: You promise to pay, subject to any limits under applicable law, all costs of collecting the amount you owe under this agreement. This includes but is not limited to reasonable attorney's fees and court costs as well as legal expenses for any bankruptcy, appeals or post judgment proceedings. We may start a collection action in the county in which the credit union is located. You will pay our fees whether or not there is a lawsuit, including attorney fees on any appeal. You will pay collection costs, such as repossession fees and court costs. All these costs and expenses may be added to the outstanding debt and WE MAY IMPOSE A FINANCE CHARGE on them at the highest rate applied to any of your advances.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells you whether, if the interest rate increases, you will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. For all borrowers: You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

NXX01A-e

### LOAN AGREEMENT (continued)

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT** - You promise to use your account for "consumer" (personal, family or household) purposes, unless the Credit Union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**

Credit Union FIBRE FEDERAL CREDIT UNION        Loan No. 0002        Acct. No.
Borrower(s) ANTHONY M NORRIS

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**15. OTHER PROVISIONS** -

NXX01A-e

Loan 0002: PERSONAL Remaining Payments          05/09/2019

```
Loan Balance:              2,845.99
Interest Date:            05/01/2019
Interest Rate:                 7.990
Remaining Payment Count:         29
Standard Payment:             114.00
Next Payment Date:        05/12/2019
Final Payment:                 90.54
Final Payment Date:       09/12/2021
Remaining Insurance:          144.34
Remaining Interest:           292.21
Remaining Payments:         3,282.54
```